UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **STACEY A. RYAN, ET. AL.** | : | **CIVIL ACTION NO. 18-cv-1496** |
| **VERSUS** | : | **JUDGE SUMMERHAYS** |
| **CALCASIEU PARISH POLICE JURY, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a Motion to Remand filed by intervenor-plaintiffs Vernon Cristopher Meyer and Carla Michelle Meyer (collectively, "the Meyers"). Doc. 9. They also move for attorney fees pursuant to 28 USC § 1447(c). *Id.* at 4. Intervenor-defendant Sasol Chemicals (USA), LLC ("Sasol") opposes the motions [doc. 13], which have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

### I.
#### BACKGROUND

This case has an extensive procedural history, detailed at greater length in the undersigned's report and recommendation on a previous attempt at removal. *See Ryan v. Calcasieu Parish Police Jury* ("Ryan I"), No. 2:17-cv-287 (W.D. La. Jul. 17, 2017). The suit began in October 2014 as a challenge to zoning decisions in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, by homeowner Stacey A. Ryan, and later joined by his sisters/co-owners of the home. Ryan brought suit against the Calcasieu Parish Police Jury ("CPPJ"), the Calcasieu Parish Zoning and Planning Board ("CPZPB"), and by amendment in January 2015, the Lake Charles Harbor and Terminal District Port Board ("the Port"). Doc. 1, att. 3; doc. 10, att. 2,

pp. 27–35. The suit related to the CPPJ and CPZPB's approval of a rezoning application by Sasol for the Mossville neighborhood of Westlake, Louisiana, from residential use to heavy industrial use, their subsequent denial of Stacey Ryan's petition for exemption of his property from rezoning, and the Port's anticipated expropriation of that property for sale to Sasol. Doc. 1, att. 3.

On January 15, 2015, the Meyers were granted leave to intervene in the suit. Doc. 1, att. 4. They named the Port as sole defendant and requested declaratory and injunctive relief on the anticipated expropriation of their five-acre property in Westlake, Louisiana, for the benefit of Sasol. *Id.* On May 7, 2015, Sasol was brought into the suit for the first time when Ryan was granted leave to amend his petition. By this amendment he asserted claims for declaratory and injunctive relief against the company relating to sewage and water service to the Ryan property. Doc. 10, att. 3, pp. 270–79. On November 6, 2015, however, he dismissed those claims without prejudice. Doc. 10, att. 4, pp. 425–26. On April 26, 2016, he dismissed all of his claims with prejudice. Doc. 10, att. 4, pp. 133–34. His sisters followed suit, leaving the Meyers as the only remaining plaintiffs to this action.[1]

On August 26, 2016, Sasol intervened in the suit to prevent disclosure of a settlement agreement and related communications with the Ryans. Doc. 10, att. 2, pp. 331–41. After the trial court denied Sasol's request, Sasol was again dismissed from the suit on October 18, 2016. Doc. 10, att. 5, pp. 321–24. Prior to this dismissal, however, the Meyers filed their second supplemental and amended petition for intervention on October 5, 2016, naming Sasol as a defendant. *Id.* at 299–305. The Meyers asserted that Sasol's project operations were interfering with telephone services and right-of-passage to their property. *Id.* at 302–05. They sought damages related to

---

[1] His sisters filed a voluntary motion to dismiss their claims on April 21, 2017, but the order attached here is not signed. Doc. 10, att. 8, pp. 8–9. Accordingly, we rely on Sasol's representation that "the Meyers are the only remaining plaintiffs to this action and the Port and Sasol are the only remaining defendants." Doc. 1, p. 2 & n. 2.

their loss of access and injunctive relief requiring Sasol "to remove all impediments and restore convenient access to [their] property and to reconnect the telephone and basic services at their property." *Id.* at 304–05. On February 17, 2017, Sasol removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. *Ryan I*, No. 2:17-cv-287, at doc. 1. There it alleged that the Port was fraudulently and egregiously misjoined because there was "absolutely no connection between the Meyers' claims against the Port regarding expropriation and their claims against Sasol related to servitude of passage," and that complete diversity existed between Sasol and the Meyers. *Id.* The court disagreed and remanded the case. *Id.* at doc. 26.

Before the first removal, the state court had scheduled a hearing regarding the Meyers' claims for February 2017. Doc. 10, att. 6, p. 11. In anticipation Sasol prepared an opposition to the request for preliminary injunction, arguing in relevant part that the Meyers' request for injunctive relief conflicted with the Chemical Facility Anti-Terrorism Standards ("CFATS"), 6 U.S.C. § 622 *et seq.*, and was therefore federally preempted. *See* doc. 10, att. 7, pp. 346–58. This memorandum was sent to the Meyers on February 14, 2017. *Id.* at 358.

Following remand, the Meyers and Sasol executed a Consent Judgment regarding the Meyers' claims, which was signed and entered as judgment on November 28, 2017. Doc. 9, att. 3. There they agreed that Sasol would allow the Meyers access to their property through "Gates 4 and 5" and would only impinge on the Meyers' access at these points "in the case of a safety, health or security emergency." Doc. 9, att. 3. In November 2018, Sasol advised the Meyers that it would temporarily close the access point at Gate 5 "in the interests of the Meyers' safety and that of their guests, customers, and/or clients" as well as the interest of facilitating emergency response for all personnel on site and furthering the security of the site. Doc. 9, att. 4. In response the Meyers filed a Rule for Contempt against Sasol on November 9, 2018. Doc. 9, att. 5.

On November 15, 2018, Sasol removed to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Doc. 1. It alleges that "[t]he filing of the Rule for Contempt reveals, for the first time in this litigation, that the Meyers' claim and positions would prevent Sasol from complying with its obligations under [CFATS]." *Id.* at 1. On December 12, 2018, the Meyers filed the instant Motion to Remand and Motion for Attorney Fees. Doc. 9. They assert that Sasol's removal is untimely, that Sasol has waived its right to removal by submitting this matter for adjudication on the merits, and that federal question jurisdiction does not exist. *Id.* Sasol opposes both motions. Doc. 13.

## II.
### LAW & ANALYSIS

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 114 S.Ct. 1673, 1675 (1994)). Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a). However, the federal district court must remand the action to state court if it finds that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removing defendant bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995).

The procedure for removal is governed by 28 U.S.C. § 1446. Generally, a defendant must file a notice of removal within thirty (30) days of its receipt of an "initial pleading setting forth the claim for relief. . . ." 28 U.S.C. § 1446(b)(1). When "the case stated by the initial pleading" does not provide grounds for removal, defendants may remove the action "within 30 days after receipt . . . of an amended pleading, motion, or other paper from which it may first be ascertained that the

case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The Fifth Circuit has indicated that "the defendant's subjective knowledge cannot convert a case into a removable action." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) (citing *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)). Rather the "other paper" conversion requires a voluntary act by the plaintiff. *See Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 254 (5th Cir. 1961). This "other paper" must be "'unequivocally clear and certain' to start the time limit running for a notice of removal." *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) (citing *Chapman*, 969 F.2d at 163).

Sasol argues that the case first became removable under § 1331 when the Meyers filed the Rule for Contempt and revealed "an actual dispute over the nature of the obligations that can be imposed by the state court and the extent to which [they] are supplanted by the federal regulatory framework required of facilities covered by the CFATS." Doc. 1, pp. 6–7, 11–12.

The Meyers assert Sasol's removal is untimely. They maintain that the Rule for Contempt could not have revealed for the first time that the case was removable because it "seeks enforcement of a judgment that embodied only the prayers for relief in the Meyers' only state court pleadings against Sasol." Doc. 14, p. 7. Accordingly, Sasol's removal is untimely because it occurred November 15, 2018, more than thirty days after the filing of their second supplemental and amended petition for intervention on October 5, 2016. *See* doc. 9, att. 7, p. 23. They point to the earlier arguments put forth by Sasol that Meyers' claims were federally preempted as evidence any potential federal questions related to the CFAT were apparent from filing of their initial petition against Sasol. *Id.* at 22 (citing doc. 9, att. 15 (Sasol's Affirmative Defenses and Answers to the Meyers' Second Supplemental and Amended Petition for Intervention) and doc. 9, att. 16 (Sasol's Memorandum in Opposition to Request for Preliminary Injunction)).

"Sasol does not deny that it raised the preemption defenses due to its CFATS obligations." Doc. 13, p. 12. However, it asserts that "removal was <u>not</u> predicated on the preemption doctrine" and that no "prior pleading or voluntary act by the Meyers insinuated (much less alleged) that the Meyers were seeking to enjoin Sasol from complying with federal mandate." *Id.*

We disagree with Sasol's characterization of both the second supplemental and amended petition for intervention and of its own arguments in support of removal. In the Rule for Contempt, the Meyers request that the court "hold Sasol in contempt and order Sasol to pay the Meyers $10,000 for each entry Sasol denies the Meyers and their guest to access their property through Gate 5." Doc. 13, att. 3, p. 3. This relief is sought because Sasol allegedly planned to restrict the Meyers' access to their property from Gate 5. *See id.* We do not find this requested relief to differ from the request that the court "issue an injunction requiring Sasol Chemicals (USA), LLC to remove all impediments and restore convenient access to [the Meyers'] Property," prayed for in the second supplemental and amended petition for intervention. Doc. 10, att. 5, p. 304.

Sasol also argues that this "removal was <u>not</u> predicated on the preemption doctrine" and is instead based on the raising of "an actually disputed, substantial federal question" under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S.Ct. 2363 (2005), and *Gunn v. Minton*, 133 S.Ct. 1059 (2013).[2] Doc. 13, pp. 10–13. In the Notice of Removal it argues that jurisdiction is "based on the inherent conflict between the Meyers' interpretation of the Consent Judgment and Sasol's compliance with CFATS." Doc. 1, p. 6. Ostensibly this means that the Meyers' request for injunctive relief potentially conflicts with Sasol's ability to comply with federal law. Though Sasol maintains that *Grable* and *Gunn*'s theory of removability is

---

[2] Under this theory, federal question jurisdiction exists over a state law claim if it necessarily states an actually disputed and substantial federal issue, which the federal forum may entertain without disturbing the balance of federal and state judicial responsibilities. *Grable*, 125 S.Ct. at 2366–68.

distinct from preemption, its awareness of the potential conflict and the Meyers' request for injunctive relief was sufficient to create notice of removability under *Gunn* and *Grable*.

If the case is removable based on a conflict between the Meyers' access claims under state law with Sasol's obligations under CFATS, then this basis would have been clear from the injunctive relief requested by the Meyers in the second supplemental and amended petition for intervention—as Sasol must itself be aware, based on the arguments it raised in the February 2017 opposition memorandum. Accordingly, Sasol's removal on November 15, 2018, is untimely and the case must be remanded. There is no need to consider the other grounds asserted in support of the Meyers' motion.

The Meyers ask that they be awarded the costs and attorney fees associated with the improper removal. Doc 9, p. 4. When ordering a case remanded to state court, this court has the discretion to "require the payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447. However, such fees are not automatic. *Valdes v. Wal-Mart Stores, Inc.,* 199 F.3d 290, 292 (5th Cir. 2000). As cautioned by the Fifth Circuit, attorney fees "should only be awarded if the removing defendant lacked 'objectively reasonable grounds to believe the removal was legally proper.'" *Hornbuckle v State Farm Lloyds*, 385 F.3d 538 (5th Cir.2004) (citing *Valdes*, 199 F.3d at 293). Given the prior notice of these removal grounds, we find Sasol's removal arguments objectively unreasonable and recommend that costs and attorney fees be awarded.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motion to Remand and Motion for Attorney Fees [doc. 9] be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 28th day of May, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE